**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**August 30, 2012**

# In the Court of Appeals of Georgia

A12A0879. GROVNER v. THE STATE.

MILLER, Judge.

Following a jury trial, Nathaniel Grovner was convicted of perjury (OCGA § 16-10-70 (a)). Grovner appeals from the denial of his motion for new trial, contending that the trial court erred in granting the State's motion to strike a potential juror for cause and in limiting his cross-examination of a witness. Grovner also contends that the trial court erred in denying his motion for directed verdict because the State failed to introduce evidence showing that he was lawfully administered an oath in the proceeding in which he was accused of perjury. For the reasons that follow, we affirm.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to

the guilty verdict." (Punctuation and footnote omitted.) *Goss v. State*, 305 Ga. App. 497 (699 SE2d 819) (2010).

So viewed, the evidence shows that on the night of the November 4, 2008 general elections, Robert Mucha, Chairman of the Board of Elections and Registrars of McIntosh County, was present at the main election office assisting and supervising the committee responsible for tallying absentee ballots. Grovner, a McIntosh County Commissioner, was also present to observe the tally process. Following the final tally of all votes, it was determined that Griffin Lotson lost the race for the post of McIntosh County Soil and Water Conservation District Supervisor.

Lotson subsequently filed a petition to contest the election, contending that election officials engaged in misconduct or fraud. At the hearing on the petition, Lotson called Grovner as a witness. Grovner testified that "[on] the night of the election . . ., after [the committee] thought they were through counting ballots[,] Mr. Mucha came with a handful of absentee ballots and said to the committee, ['O]h, look what I found that's got to be counted.[']" Grovner further testified that Mucha claimed to have found between 500 and 600 additional absentee ballots that needed to be tallied. The trial court denied Lotson's petition, finding no irregularities or fraud in the election process.

Grovner was subsequently indicted for perjury based on his alleged false prior testimony at the contested election proceeding that on the night of the elections, Mucha had declared finding an extra 500 to 600 additional absentee ballots that needed to be counted. At Grovner's perjury trial, the State called numerous witnesses who testified that, contrary to Grovner's prior testimony, Mucha never said that he had found an additional 500 absentee ballots that needed to be tallied. Following the presentation of evidence, the jury found Grovner guilty of perjury.

1. Grovner contends that the trial court erred in granting the State's motion to strike a potential juror for cause. We disagree.

> Whether to strike a juror for cause is within the sound discretion of the trial court. And inasmuch as the trial court's conclusion on bias is based on findings of demeanor and credibility, which are peculiarly within the trial court's province, those findings are to be given deference.

(Citations and punctuation omitted.) *Wolfe v. State*, 273 Ga. 670, 672 (2) (544 SE2d 148) (2001).

During voir dire, the potential juror stated that she was strongly partial to one side and had held those feelings of partiality for a long time. Despite the juror's repeated statements that she could set aside her partiality and decide the case based upon the evidence, the trial court excused the juror for cause upon the State's motion.

3

Although Grovner contends that the trial court erred in doing so, he had "no vested interest in having any particular juror to serve; he [was] entitled only to a legal and impartial jury. The erroneous allowing of a challenge for cause affords no ground of complaint if a competent and unbiased jury is finally selected." (Punctuation and footnote omitted.) *Felton v. State*, 270 Ga. App. 449, 451 (1) (606 SE2d 649) (2004); see also *Humphreys v. State*, 287 Ga. 63, 71 (4) (694 SE2d 316) (2010). Since Grovner has not shown that the jurors selected to decide his case were incompetent or biased, his claim affords no basis for reversal. See *Humphreys*, supra, 287 Ga. at 71 (4); *Bryant v. State*, 288 Ga. 876, 881-882 (4) (e) (708 SE2d 362) (2011).

2. Grovner contends that the trial court erred in limiting his cross-examination of Mucha regarding his attempts to determine whether Grovner would be removed from his position as County Commissioner prior to trial. We disagree.

"Although the appellant is entitled to a thorough and sifting cross-examination of a witness, the scope of such cross-examination is within the sound discretion of the trial court." (Citations and punctuation omitted.) *Moon v. State*, 288 Ga. 508, 511 (3) (705 SE2d 649) (2011). "In assessing whether the limits imposed by the trial court were reasonable, our task is to determine whether the jury had sufficient information to make a discriminating appraisal of the witness's motives and bias." (Citations and

4

punctuation omitted.) *Haggard v. State*, 302 Ga. App. 502, 506 (2) (690 SE2d 651) (2010).

During cross-examination of Mucha, Grovner's counsel was able to elicit testimony that Mucha asked law enforcement to investigate Grovner for perjury; that he drafted and presented affidavits to witnesses used to support the investigation; and, that he sent an e-mail to the County Attorney requesting that Grovner be prosecuted for perjury. When Grovner sought to ask Mucha if he recalled whether the Governor's Office would schedule a review to determine whether Grovner should remain a County Commissioner based on his indictment, the State objected on relevancy grounds. Grovner contends that Mucha had previously made a statement that he called the Governor's Office every day, twice a day, to determine whether a review would be held, and that such was relevent to show Mucha's bias and interest. In light of Grovner's counsel's extensive cross-examination of Mucha showing his active involvement in bringing the perjury charge against Grovner, the jury had sufficient information to determine Mucha's motives and bias. As such, the trial court did not abuse its discretion in limiting Grovner from asking Mucha about the frequency in which he called the Governor's Office.

5

3. Grovner also contends that the trial court erred in denying his motion for directed verdict because the State failed to present evidence establishing that he was ever administered a lawful oath when he testified at the hearing on the petition disputing the November 2008 election results. His claim is without merit.

> In reviewing the denial of a motion for a directed verdict of acquittal, we apply the same standard of review applicable to a challenge to the sufficiency of the evidence. Under that standard, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citations and punctuation omitted.) *Walker v. State*, 314 Ga. App. 714, 716 (1) (725 SE2d 771) (2012).

One of the essential elements of the perjury offense is that a "lawful oath" be administered to the defendant in a judicial proceeding. OCGA § 16-10-70 (a); *Kirkland v. State*, 140 Ga. App. 197 (1) (230 SE2d 347) (1976). "[W]here there is evidence that an oath was administered to a witness, it will be presumed in the absence of proof to the contrary that a lawful or statutory oath was administered." (Citations and punctuation omitted.) *Beecher v. State*, 164 Ga. App. 54, 56 (3) (296 SE2d 374) (1982); see also *Kirkland*, supra, 140 Ga. App. at 198 (1).

6

At Grovner's trial, the State introduced into evidence a certified transcript of the disputed election hearing where Grovner had previously testified. See *Walker*, supra, 314 Ga. App. at 718 (3) ("As a general rule, to prove that the defendant made a perjured statement in a former judicial proceeding, the State must introduce the record of the former proceeding or a duly authenticated transcript.") (citations and punctuation omitted). Although the transcript does not reveal the full oath that was administered to Grovner, it does show that he was duly sworn before testifying. Grovner argues that this transcription is hearsay, and therefore lacking probative value. In making the transcription, however, the court reporter was not making an out-of-court statement, but was rather recording the in-court statements made by others, including Grovner himself. See *McClain v. State*, 311 Ga. App. 750, 752 (716 SE2d 829) (2011) ("[H]earsay generally relates to an out-of-court statement made by someone other than the witness.") (footnote omitted). Since the certified court reporter attested to the truth of the transcript, the transcript was properly authenticated and was the best evidence of what transpired during the trial. See OCGA § 24-7-20 ("The certificate or attestation of any public officer . . . shall give sufficient validity or authenticity to any copy or transcript of any record . . . to admit the same into evidence."); OCGA § 24-5-31 ("Copies of records of judicial proceedings . . . shall

7

be admitted as primary evidence, when properly authenticated."); *Sikes v. State*, 76 Ga. App. 883, 885 (2) (47 SE2d 677) (1948) (providing that the highest and best evidence of a judicial proceeding is the record of the trial). Moreover, "[t]he trial transcript certified by the court reporter is presumed to be true, accurate, and correct. OCGA § 15-14-5." *Willis v. Willis*, 288 Ga. 577, 581 (3) (i) (707 SE2d 344) (2011). Notably, Grovner provides no evidence showing that the trial transcript was incorrect. Indeed, Grovner admitted at his perjury trial that he was obligated to tell the truth at the disputed election hearing. Since the trial transcript reflects that Grovner was duly sworn, and he failed to provide any evidence to the contrary, it is presumed that a lawful oath was administered. Cf. *Kirkland*, supra, 140 Ga. App. at 198 (1).

Grovner also argues that admission of this transcription violated the Confrontation Clause of the Sixth Amendment to the United States Constitution. However, when the State sought to introduce the transcript, he objected only on hearsay grounds. By failing to raise a Confrontation Clause objection at trial, Grovner is procedurally barred from raising the issue on appeal. See *Character v. State*, 285 Ga. 112, 117 (3) (674 SE2d 280) (2009); *Kirkland v. State*, 315 Ga. App. 143, 147 (2) (726 SE2d 644) (2012). Consequently, the trial court did not err in denying

Grovner's motion for a directed verdict on the ground that the State failed to present evidence of a lawfully administered oath.

*Judgment affirmed. Mikell, P.J., and Ray, J., concur.*